Dallas Ray TURNER, an Infant, by and through Ann Forrester, His Next Friend, Appellant,

v.

Bernard WHYMAN, Respondent.

No. 51824.

Supreme Court of Missouri,
Division No. 2.

Feb. 13, 1967.

Donald S. Hilleary, Clayton, A. Robert Belscher, St. Louis, for appellant.

F. X. Cleary, Paul S. Brown, Daniel T. Rabbitt, Jr., Moser, Marsalek, Carpenter, Cleary & Jaeckel, St. Louis, for respondent.

PRITCHARD, Commissioner.

The issue is whether the plaintiff, a "not very big" boy of eight years, bore such relationship to defendant, owner of an apartment building, that the latter is liable in damages for injuries suffered by plaintiff from a fall from a fire escape ladder while engaged in helping Mr. Brown, defendant's tenant, to "shoo" pigeons from the attic of the building.

On defendant's motion, the trial court directed a verdict against plaintiff and entered judgment against him in his $40,000 action for personal injuries.

The apartment building at 1735 South 18th Street is an old residence converted into a six unit apartment which faces east on the west side of 18th Street. Defendant's tenant, Brown, resided there and plaintiff would go there each day to stay with his grandmother until his mother picked him up in the late afternoon. On the south side of the building is a fire escape, with a window from Brown's third-floor apartment leading thereon. The attic of the building is reached through a trap door in the third floor hallway, and there are two outside vent holes in the south side of the building. The crawl space in the attic was not very high—about three feet in the center and tapering off to a point where a man could not squeeze through.

Defendant had three employees, a carpenter and two others, who worked for him on properties. He had complaints about the pigeons perhaps a year or two prior, and one of his men then attempted to chase out the pigeons.

Giving rise to the incident in which plaintiff was injured was the accumulation of a large number of pigeons which nested in the attic. Brown complained to defendant about the condition of filth which existed.

Defendant asked Brown if he had any method by which the latter could get the pigeons out of the attic. Brown told defendant that his teen-age son (age 17 or 18, weighing about 130 pounds) would go up there and get rid of the pigeons. Defendant asked Brown how much it would be worth and Brown said his son would want $5, to which defendant agreed: "That sounds very fair. When the job is finished, let me know and I will send you a check." Further testimony from Brown was that he suggested to defendant that "I had a boy that might get them out." Defendant said, "Well, what about this, I will give him a couple of dollars." Brown said, "No, he wouldn't do the job for two dollars. He might for five." Upon being asked what boy he was speaking of, Brown answered: "In fact, I was talking about my time." After Brown made the suggestion, defendant said he should go ahead and get it done, "When it is done, you call me up and I will come up and examine it and pay." Brown's son did not clean out the pigeons. He went up there (to the attic) and instead of cleaning them out, he fastened them all up by closing the opening (the vent) from which they were coming and going.

On a Sunday before the Tuesday when plaintiff fell, Brown told plaintiff and another boy that he was going to shoo the pigeons away and stop up the hole. Plaintiff and the boy helped him, but they did not get all of them—there were probably a half dozen pigeons left. Brown blocked up the hole to keep them from coming back in. Brown called defendant, but instead of coming up and inspecting the attic, he sent a check, received by Brown, he thought, on the day plaintiff was hurt. On Sunday, Brown and the two boys went to the third floor, put a ladder to the trap door through which the boys went and shooed the pigeons out of the vent holes. The boys were on their knees. Brown paid the boys a quarter apiece. On Tuesday, plaintiff went to his grandmother's, changed clothes, and met the other boy, Haskins. They then met Brown who asked them if they wanted to help him

shoo pigeons. Brown said, "today would be easier; we should go out on the fire escape and get them easier." They went upstairs where plaintiff went out the window first, and then Donald (Haskins) came out and went up the ladder. Brown remained in the room close to the window. Plaintiff stepped over by the end of the rail on the fire escape. Donald stuck his hand in the vent and pulled out four, five or six pigeons, then got down, at which time Brown came out and went up the ladder. Plaintiff stepped back as Donald stepped into the window where he sat down, and plaintiff stood there a few minutes. Plaintiff started over (to the window) and fell from the fire escape, catching himself a couple of seconds on the railing. He hit his arm on the second-floor fire escape and he landed, unconscious, in the pit below.

 The first of plaintiff's somewhat intertwined alternative theories by which it is contended that the evidence was sufficient to make a submissible case is that defendant was negligent by inviting plaintiff to assist in defendant's work and then directing plaintiff into a position of danger. He argues that defendant engaged Brown to correct a nuisance that had occurred in the low crawl space between the third floor and the roof of his building. It (the attic) was small for a grown man to do the job; the defendant knew that there would be others working on this job and that they would be smaller persons; that it might be Brown's son, but he also knew that it might be someone else. He had no specific knowledge as to whether Brown's son would be able to do the job, or whether he was too large for the work. These arguments are largely not supported by the evidence or any legitimate inference arising therefrom even treating both the evidence and any such inferences as might arise most favorable to plaintiff (as we must do). Defendant did engage Brown to correct the nuisance; the attic was small for a grown man to crawl in; he knew that the person who might do the work was Brown's son, a teen-age boy. While he had no specific knowledge as to whether Brown's son would be able to do the job or whether he was too large for the work, the only evidence is that he might be able to get the pigeons out. The difficulty with the arguments is that there is no evidence, or even an inference, that defendant had in mind employing young boys of tender years such as plaintiff. The only persons whom defendant could have had in mind to do the job under this evidence were Brown and his teen-age son. Those are the ones employed or to be employed by defendant to do the job. Nothing was mentioned with respect to plaintiff or any small persons like him, and there is nothing to indicate that defendant could foresee that Brown would go on his own to get a young boy. While it would be negligence for one to hire a very young person, nonappreciative of the dangers of heights, to climb out on the fire escape, there is no contact shown between defendant and plaintiff whereby defendant could be held liable for the plaintiff's injuries. The act of engaging plaintiff and his friend, Donald, is that of Brown. Defendant agreed to pay Brown (and him only) if he would get the pigeons out of the attic. The here applicable rule is in Oatman v. St. Louis Southwestern Ry. Co., 304 Mo. 38, 263 S.W. 139, wherein many authorities are set forth in its support at S.W. pages 143 and 144, that where one working for another of his own volition, without the knowledge or consent of any one in authority, cannot thereby establish the relation of employer and employee, so as to base a claim for damages on the duty that an employer owes to an employee. The fact that the injured person engaged in the work at the request of an employee takes his case out of the rule, but if the employee is without authority to bind the employer to the arrangement, the assistant is no more than a volunteer. See also 56 C.J.S. Master and Servant, § 177, p. 864. There is no evidence here by which a jury could reasonably find, by legitimate inference, or otherwise, that defendant knew or should have known (from the necessities of the case, i. e., the small attic entrance and crawl space) that very young persons such

as plaintiff would be used by Brown to clear out the pigeons. The trial court did not err in directing a verdict for defendant as to this theory.

 Plaintiff's second theory is that Brown was an employee of defendant acting within the scope of his employment at the time he invited plaintiff to join in this hazardous undertaking. Brown, however, was not employed to hire anyone other than his seventeen-year old son to do the job of shooing pigeons out of the attic. As stated, Brown had no authority from defendant to hire plaintiff and he could not have been acting within the scope of his employment at the time he did so. § 294.-040 RSMo 1959, V.A.M.S., prohibiting the employment of children under the age of sixteen years of age in enumerated occupations and in any other "occupation dangerous to the life, health or limb, or injurious to the health or morals of children under the age of sixteen," is inapplicable for the same reason—no authority from defendant to Brown to hire young children.

 For his third theory, plaintiff asks us to consider defendant negligent in failing to exercise reasonable care for plaintiff's safety when he employed others to do work which he should have recognized as likely to create, during its progress, a peculiar unreasonable risk of physical harm to plaintiff unless special precautions were taken for his safety. We have partially considered this argument above in that, under this record, and all legitimate inferences arising therefrom, defendant did not have plaintiff (or others his age and size) in mind when he told Brown to go ahead with the job, using his own seventeen-year old son. The fact that there was a small opening to the attic, the crawl space therein was small and that the job might require (there was no evidence that it might or would) those engaged in it to go out on the fire escape, does not give a basis for foreseeability or anticipation that such a person so engaged would be plaintiff or one like him.

Plaintiff's last theory is that the defendant was negligent in not making the premises safe for plaintiff, an invitee of defendant's tenant, Brown. Nothing whatsoever is shown that would even remotely indicate that the fire escape was in a dangerous or defective condition, or that there was anything about it known to defendant which would charge him with a duty to repair or make safe. The photographs in evidence show nothing out of the ordinary about the fire escape. The trial court did not err in directing a verdict as to this theory of liability.

The judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM:

The foregoing opinion by PRITCHARD, C., is adopted as the opinion of the Court.

All of the Judges concur.